UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE


R.R., *ET AL.*                          )
                                        )
v.                                      )    NO. 2:05-CV-50
                                        )
BOARD OF EDUCATION,                     )
KINGSPORT CITY SCHOOLS, *ET AL.*        )


**MEMORANDUM OPINION**

The plaintiffs' complaint is before the Court on the motion to dismiss, or in the alternative, motion for summary judgment filed by the defendants, Board of Education and its employees, and the motion to dismiss filed by defendant Wedford Marshall. [Docs. 40 and 49]. Because the defendants, Board of Education and its employees, rely upon facts not in the complaint, the Court must consider its motion as one for summary judgment. Nevertheless, the facts are in pertinent part undisputed, and thus all the motions are considered as a matter of law.

Plaintiffs filed this action on behalf of their minor child, J. R., a student at Dobyns–Bennett High School in Kingsport, Tennessee. J. R. was declared eligible for special education services, having been diagnosed with Attention Deficit

Hyperactivity Disorder. Pursuant to the Individuals With Disabilities Education Act, ("IDEA") a Individual Education Plan ("IEP") was implemented. J.R.'s IEP also incorporates a Behavior Management Plan ("BMP").

In general, the plaintiffs' complaint alleges that due to the failure of the defendant school system and its employees, and the failure of certain parents to supervise their children, J.R. has been subjected to physical and verbal abuse from fellow students, in addition to alleging that the harassment has denied J.R. his entitlement to a free public education. While the IDEA requires that a disabled student be provided an appropriate free public education, it is pursuant to 42 U.S.C. § 1983, Title IX, 42 U.S.C. § 1985, 42 U.S.C. § 1983, and the Tennessee Governmental Tort Liability Act that the plaintiff seeks redress from the school system and its employees.

The IDEA provides, in pertinent part:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans With Disabilities Act of 1990 [42 U.S.C. § 1201 *et seq.*, Title V of the Rehabilitation Act of 1973 [29 U.S.C. § 791 *et seq.*], or other federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such law seeking relief it is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

In accordance with the foregoing section of the IDEA, the plaintiffs

2

requested, and were granted, a due process hearing . In the request, the plaintiffs asserted that the school had maintained a hostile, dangerous and harassing environment preventing J.R. from receiving a free and appropriate public education, and claimed that the school had not complied with his IEP. The due process hearing was held on November 29, 2005 before Marilyn Hudson, Administrative Law Judge. This Court has not been notified of the ruling, if any, of the Administrative Law Judge.

The defendant school system and its employees seek dismissal of the plaintiffs' complaint on the basis that the plaintiffs have failed to exhaust their administrative remedies as required by the IDEA. The individual defendant, Wedford Marshall, has moved to dismiss the plaintiffs' complaint on grounds that it fails to state a cause of action against him for which relief may be recovered. The plaintiffs' complaint against another individual defendant was nonsuited. A third individual defendant was dismissed by the Court on its own motion, for the plaintiffs' failure to show cause as to why they had failed to seek judgment by entry of default as to that defendant.

Despite asserting numerous legal bases other than a violation of the IDEA, the plaintiffs' complaint essentially restates the same charges made by the plaintiffs against the defendant school system and its employees in its due process request, that is, that the school failed to maintain a safe environment for J.R. , free from harassment.

The IDEA was enacted to "ensure that all children with disabilities have

3

Case 2:05-cv-00050   Document 75   Filed 04/28/06   Page 3 of 8   PageID #: 34

available to them a free appropriate public education that emphasizes special education and related services. . . " 20 U.S.C. § 1400(d)(1)(A). The IDEA provides numerous procedural safeguards to assure that children with special needs receive a free appropriate public education, which include the right of parents to have meaningful input into decisions affecting their children's education. The IDEA requires that resolution of complaints "with respect to any matter related to the identification, evaluation, or educational placement of the child, or the provision of the free appropriate public education of such a child," be by an impartial due process hearing conducted by either a local or state educational agency. 20 U.S.C. § 1415. Any party dissatisfied with the results of the due process hearing may bring suit in a state or federal court. 20 U.S.C. § 1415(i)(2).

As a condition precedent to a lawsuit, the plaintiff must exhaust his administrative remedies. *Crocker v. Tennessee Secondary Sch. Athletic Ass'n.*, 873 F. 2d 933, 935-36 (6th Cir. 1989). Section 1415 "requires the exhaustion of administrative remedies prescribed under the IDEA, even when the plaintiffs do not rely on the IDEA as a source of their claims, if their claim is sufficiently related to "free appropriate public education" to a disabled child under the IDEA. *Stutts v. Eastern Kentucy University*, 307 F. Supp. 2d 853, 857 (citing *Covington v. Knox County School System*, 205 F. 3d 912, 916 (6th Cir. 2000) (which recognized this to be the holding of some district courts in the Sixth Circuit, though declining to address the issue). Further, a plaintiff may not

circumvent the IDEA's exhaustion requirement by seeking money damages to which the plaintiffs would not otherwise be entitled under the due process hearing. *Covington* at 916-17.

There are exceptions to the exhaustion requirement where exhaustion would be futile or inadequate to protect the plaintiff's rights. *Id.* at 917. Neither ground for an exception to the exhaustion requirement has been established by the plaintiffs in this case. However, the plaintiffs do assert that futility excuses exhaustion, submitting that were they not to file their cause of action until after the conclusion of the due process hearing, their action may be barred the applicable statute of limitations.

Plaintiffs point out that causes of action alleged under § 1983 and Title IX, as well as the Tennessee Governmental Tort Liability Act, are governed by Tennessee's one year statute of limitations. Plaintiffs are concerned that no court has addressed this issue, extending the exhaustion requirements to toll the statute of limitations for a § 1983 or Title IX action. Nevertheless, the Eastern District of Kentucky has held that a § 1983 claim would not operate to alleviate the exhaustion requirement under the IDEA. Further, this appears to be consistent with a majority of circuits having addressed the issue, and is consistent with the Sixth Circuit's opinion, addressing whether seeking money damages might take an action outside of the exhaustion requirements, stating that to so hold, would simply circumvent the IDEA's elaborate requirements. The Court noted that the administrative process might afford sufficient relief even if it were not the specific relief

5

requested. *Id.* at 916-17.

A review of the plaintiffs' complaint reflects that all of the allegations made by the plaintiff against the defendant and its employees are clearly related to those defendants' obligations under the IDEA. Accordingly, for the foregoing reasons, the plaintiffs' complaint against those defendants will be **DISMISSED** for failure to exhaust their administrative remedies.

Wedford Marshall was named by the plaintiffs in his capacity as the guardian of two of the children who harassed and assaulted J.R. The plaintiffs allege that Mr. Marshall should have known of the harassment and assaults, had a duty to supervise the children while they were at school, and, with deliberate indifference to the safety of J.R., failed to enforce any plan to improve behavior, and permitted children under his care and other individuals to conspire to harm J.R. The plaintiffs seek damages against Mr. Marshall under 42 U.S.C. § 1983, on the theory of civil conspiracy, and pursuant to *Tenn. Code Ann.* § 49-6-4016, which creates a civil cause of action for intentional assault, personal injury or injury to the personal property of a student during a school function.

The defendant correctly argues, and the plaintiffs concede, that in order for Mr. Marshall to be held liable under 42 U.S.C. § 1983, he must act "under color of state law." *Wolotsky v. Huhn, et al.*, 960 F. 2d 1331, 1335 (6th Cir. 1992). The plaintiffs' position is particularly unusual in that the plaintiffs attempt to hold a private party liable

6

for actions which the plaintiffs allege are public in nature.

In determining whether a party's actions constitute "state action", the party's actions must be "fairly attributable to the state." *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S. Ct. 2744, 2753, 73 L. Ed. 2d 482 (1982). The Supreme Court has set forth tests for determining whether conduct is fairly attributable to the state under § 1983, which were summarized by the Sixth Circuit as: (1) the public function test, (2) the state compulsion test, and (3) the symbiotic relationship or nexus test. *Wolotsky* at 1335. The public function test requires that the private individual has exercised powers which are traditionally reserved to the state. *Flagg Bros. v. Brooks*, 436 U.S. 149, 157 (1978). The conduct complained of, that is, the supervision of children, is certainly not a function that has been traditionally reserved to the state.

The state compulsion test requires that the state exercise significant coercive power or encouragement such that the decisions of the private individual are deemed to be that of the state. *See Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). Plaintiffs argue that compulsory attendance laws, under this test, make the defendant's actions fairly attributable to the state. While certainly the defendant is compelled, by the state, to see that children under his care attend either a public or private school, or participate in approved home schooling, the compulsion ends there. Compulsory attendance laws do not require the defendant to supervise his children once they are present at school, and therefore, it cannot be said that his actions, or lack thereof, regarding the supervision of

7

children were compelled by the state.

Finally, the plaintiffs have not met the symbiotic relationship or nexus test. Under this test, the state must be intimately involved in the challenged private conduct. *Wolotsky* at 1335. The state is not intimately involved in how the defendant supervises his children during school hours. Thus, it is the opinion of the Court that it is clear that Mr. Marshall's actions cannot be attributed to the state, and therefore the plaintiffs may not maintain a § 1983 action against him. The Court need not determine whether the plaintiffs have stated a cause of action under their state law theories, as the Court declines to exercise any supplemental jurisdiction over those claims.

Accordingly, the plaintiffs' complaint will be **DISMISSED**.

ENTER:

s/J. RONNIE GREER  
UNITED STATES DISTRICT JUDGE
